UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIMONE QUANTESZ DUDLEY,

        Petitioner,

v.

                                                  Case No. 21-cv-12329
                                                  HON. MARK A. GOLDSMITH

MICHELLE FLOYD,

        Respondent.

_____/

**OPINION & ORDER: (i) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS; (ii) AMENDING THE CAPTION; (iii) DENYING THE MOTION TO REMAND (Dkt. 13) AND THE MOTION FOR A NEW TRIAL (Dkt. 14); (iv) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (v) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Simone Quantesz Dudley, confined at the Cooper Street Correctional Facility in Jackson, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In his pro se application, Petitioner challenges his conviction for possession with intent to deliver 50 or more but less than 450 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iii).  For the reasons that follow, the petition for writ of habeas corpus is denied.[2]

---

[1] The Court orders that the caption in this case be amended to reflect that the proper respondent in this case is now Michelle Floyd, the warden of the Cooper Street Correctional Facility, where Petitioner is now incarcerated.  The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden. See Edwards v. Johns, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); see also Rule 2(a), 28 foll. U.S.C. § 2254.

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to the petition, the briefing includes Respondent's brief (Dkt. 18).

1

## I.    BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Oakland County circuit court.  This Court recites verbatim the relevant facts upon which the Michigan court of appeals relied, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> Dudley's conviction arises from the discovery of cocaine during the execution of a search warrant. On March 15, 2017, members of the Oakland County Narcotics Enforcement Team (NET) executed a search warrant at Perry Place, the Pontiac apartment of Dudley's 94-year-old great-grandmother, and found cocaine and narcotics-packaging materials. The detectives also located certain items bearing Dudley's name, as well as the name of his brother.[3] As officers were searching the exterior of the premises, Dudley, his brother, and another man arrived in the latter's vehicle, carrying food. After the three men began nonchalantly walking in a direction away from the apartment, detectives approached them. According to the detectives, Dudley yelled that they could not search his house without a warrant. The three men were detained and searched. The detectives seized a cell phone and approximately $700 from Dudley. Text messages subsequently extracted from Dudley's cell phone were indicative of drug activity. While jailed, Dudley made several phone calls that included references to narcotics trafficking. At trial, Dudley denied possessing the cocaine found inside his great-grandmother's apartment or having any knowledge that drugs were stored there. The defense suggested that Dudley's brother, who was their great-grandmother's caregiver and had a key to the apartment, possessed the drugs.

People v. Dudley, No. 343081, 2019 WL 4553477, at * 1 (Mich. Ct. App. Sept. 19, 2019). Petitioner's conviction was affirmed on appeal. Id., lv. denied, 941 N.W. 2d 643 (Mich. 2020).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. People v. Dudley, No. 2017-262665-FH (Oakland Cnty. Cir. Ct., Dec. 17, 2020); 12/17/20 Order at PageID.73–77 (Dkt. 1).  The Michigan court of appeals denied Petitioner leave to appeal.  People v. Dudley, No. 356215 (Mich. Ct. App. May 5, 2021); 5/5/21 Order at PageID.78. (Dkt. 1). Petitioner filed an application for leave to appeal in the Michigan supreme court.  On January 4,

---

[3] Dudley's brother was charged as a codefendant in this matter, but he entered a no-contest plea shortly before trial. (footnote original).

2022, the Michigan supreme court remanded the case back to the Michigan court of appeals to hold the case in abeyance pending that court's decision in People v Good (court of appeals docket no. 349268). The Michigan supreme court further ordered that, after Good is decided, the court of appeals should reconsider Petitioner's post-conviction appeal in light of whatever decision it reached in Good. People v. Dudley, 967 N.W.2d 628 (Mich. 2022).

Petitioner filed his habeas application during the pendency of his post-conviction proceedings in the state courts. This Court held the petition in abeyance pending the completion of Petitioner's state post-conviction proceedings. Dudley v. Cheeks, No. 21-12329, 2022 WL 1085768 (E.D. Mich. Apr. 11, 2022).

After Good was decided, the Michigan court of appeals reconsidered Petitioner's application for leave to appeal and again denied it. People v. Dudley, No. 356215 (Mich. Ct. App. Jan. 26, 2023); 1/26/23 Order at PageID.247 (Dkt. 10). The Michigan supreme court rejected Petitioner's application for leave to appeal the denial of his post-conviction motion on July 1, 2024, because it was filed beyond the 56-day time period to file an application with that court following the Michigan court of appeals' decision. 1/26/23 Order at PageID.248.

This Court subsequently permitted Petitioner to reinstate his case (Dkt. 11). Respondent has filed an answer to the petition (Dkt. 18). Petitioner in his habeas petition seeks habeas relief on the following grounds: (i) the evidence was insufficient to convict; (ii) the trial court denied Petitioner a fair trial by permitting the prosecutor to introduce prior bad acts evidence for the sole purpose of establishing Petitioner's propensity to commit the charged offense; (iii) trial counsel was ineffective for failing to object to irrelevant and prejudicial testimony from a police officer and failing to impeach that officer; (iv) Petitioner was denied his Fourth Amendment right to be free from an unreasonable search and seizure; (v) Petitioner was denied the effective assistance of

trial counsel; and (vi) Petitioner's statement to the police should have been suppressed where the statement was taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966).  These arguments fail for the reasons explained below.

## II.   ANALYSIS

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405–406 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 410–411.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### A. Claim # 1 Sufficiency of Evidence

Petitioner initially argues that there was insufficient evidence to support his conviction that he possessed the cocaine recovered from the Perry Place residence in Pontiac, Michigan.  It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In Re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318–319 (punctuation modified).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. See United States v. Farley, 2 F.3d 645, 650 (6th Cir. 1993).  "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." United States v. Kelley, 461 F.3d 817, 825 (6th Cir. 2006) (punctuation modified).  Moreover,

5

"[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." Id.

The Michigan court of appeals rejected Petitioner's claim:

Viewed in a light most favorable to the prosecution, the totality of the circumstances indicated a sufficient nexus between Dudley and the contraband discovered inside Perry Place. There was evidence that in January 2017, less than three months before the search of Perry Place, NET officers searched a residence on W. Princeton, and found Dudley's state identification card, credit union documents, a medical bill, and two prescription medication bottles all bearing the Perry Place address. Dudley admitted that 8 grams of cocaine found inside W. Princeton belonged to him. Dudley was arrested following the search of W. Princeton and, in a recorded jail call, Dudley stated that he would have to build his "sh*t back up" because the longer he waited, "the more people are going to other people." Dudley was released on bond and, in March 2017, engaged in text-message exchanges indicative of narcotics trafficking.

On March 15, 2017—the day the search warrant was executed at Perry Place— Dudley arrived at the small apartment around 8:00 a.m. and had been there for two to three hours before leaving to pick up food. While in the apartment, Dudley had a text-message exchange with someone who accused him of shorting the person in a recent drug transaction. Subsequently, the police found approximately 164 grams

6

of cocaine in the apartment. Some of the cocaine was readily visible on a desk in the living room and on the dining room table. Materials indicative of drug packaging, including baggies, a digital scale, a glassware measuring cup, and a bottle of acetone, were also out in the open. In a recorded phone call Dudley made from jail, he stated: "[D]amn I should have sat my ass down, I just turned ... two balls into ... close to about eight or nine that quick man." In other jail calls, Dudley discussed narcotics, including his belief that the person he "got the sh*t from" was the informant used to obtain the search warrant for Perry Place. A jury could reasonably infer from this evidence that Dudley's claim that he had no knowledge of the drugs in the apartment was not credible.

There was also evidence that enabled a jury to reasonably infer that Perry Place was Dudley's residence, or one of his residences. On the desk where cocaine was found were documents bearing Dudley's name with the Perry Place address. Cocaine was hidden in both bedroom closets and documents also bearing Dudley's name, though reflecting the W. Princeton address, were on the floor of one of the bedrooms. In the other bedroom, the great-grandmother's room, a safe contained paperwork for both Dudley and his brother, which included two receipts in Dudley's name. In the closet where the cocaine was hidden was a shoebox containing Dudley's résumé with the Perry Place address and a letter addressed to Dudley from a prisoner, discussing potential earnings from selling drugs in a prison facility. Further, as the warrant was being executed, Dudley returned to the complex and initially walked in the direction of the apartment, but after seeing the detectives, Dudley and his companions "slowly and nonchalantly just turned and walked in a different direction[.]" Significantly, when the detectives approached the three men, Dudley yelled, "Y'all need a warrant to be in my mother[ ]f**king house."

The reasonable inferences arising from this evidence, considered together, were sufficient to enable the jury to find beyond a reasonable doubt that Dudley, at minimum, had joint control of the contraband in the apartment. . . .

Here, there was sufficient evidence that Dudley possessed the drugs found in the apartment.

People v. Dudley, 2019 WL 4553477, at *2–3.

Under Michigan law, to convict a defendant of possession with intent to deliver a controlled substance, the prosecution must prove: (i) that the recovered substance is a narcotic; (ii) the weight of the substance; (iii) that the defendant was not authorized to possess the substance; and (iv) that the defendant knowingly possessed the substance with the intent to deliver it. See People v. McGhee, 709 N.W.2d 595, 612 (Mich. Ct. App. 2005). To convict a defendant under Michigan

7

law of possession of a controlled substance, a prosecutor must prove that the defendant exercised control or had the right to exercise control over the controlled substance.  See McFarland v. Yukins, 356 F.3d 688, 708 (6th Cir. 2004) (citing People v. Konrad, 536 N.W.2d 517, 521 (Mich. 1995)) (additional citations omitted).  Under Michigan law, a defendant need not have actual physical possession of a controlled substance to be guilty of possessing it.  People v. Wolfe, 489 N.W. 2d 748, 753 (Mich. 1992).  Possession of a controlled substance may be actual or constructive.  Id.  "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband."  Id. at 754.  Constructive possession of a controlled substance can be proven by circumstantial evidence.  See McGhee, 709 N.W. 2d at 612; see also United States v. Gibbs, 182 F. 3d 408, 424 (6th Cir. 1999).

The evidence in this case was sufficient for a rational trier of fact to conclude that Petitioner had constructive possession of the cocaine recovered from the Perry Place residence.  The discovery of several documents in Petitioner's name in several different locations within the house in close proximity to the cocaine was sufficient circumstantial evidence for a rational trier of fact to conclude that Petitioner had the right to control the narcotics that were recovered from the residence.  See Anderson v. Trombley, 451 F. App'x 469, 475 (6th Cir. 2011); see also, United States v. Jenkins, 593 F.3d 480, 484 (6th Cir. 2010) (finding the evidence sufficient to show that the defendant constructively possessed drugs recovered in a house—as required for convictions for possession with intent to distribute marijuana, cocaine, and cocaine base—where the defendant was present at the house on the day that the drugs were found in house, the defendant had unlimited access to house and lived there part time and stored items there, and scales and plastic bags of marijuana had been found with defendant's driver's license and other personal papers in the house's only bedroom).

8

Petitioner also admitted to living at the Perry Place residence when he confronted the police and warned them that they needed a warrant "to be in my mother[ ]f\*\*king house."  Petitioner's admission that he lived at the Perry Place address where the cocaine was recovered was sufficient to establish that he constructively possessed the drugs.v See United States v. Leary, 422 F. App'x 502, 507 (6th Cir. 2011).

The mere fact that Petitioner's brother Antwan also lived at this address would not undermine the jury's finding that Petitioner possessed the drugs.

When multiple residents occupy a house, controlled substances or weapons need not be discovered in a particular room in the house to show constructive possession; rather, for a jointly occupied home, constructive possession can be demonstrated through minimal, purely circumstantial evidence connecting one occupant to the contraband.  See United States v. Latimer, 16 F.4th 222, 227 (6th Cir. 2021).  Under Michigan law, the prosecution is only required to prove that Petitioner had joint, and not exclusive, possession of the controlled substances.  McFarland, 356 F.3d at 710 (citing Konrad, 536 N.W. 2d at 521).  Federal law is in accord on this point.  Gibbs, 182 F.3d at 425.  Although the jury was free to believe that the cocaine belonged only to Petitioner's brother, they were not required to do so and could instead readily infer from the evidence that Petitioner either alone, or in connection with his brother, possessed the cocaine.  See United States v. Caldwell, 518 F.3d 426, 432 (6th Cir. 2008).  The mere fact that the police did not recover a key to the residence from Petitioner did not preclude the jury from finding him guilty of constructive possession of the drugs, in light of the other evidence in this case. See, e.g., Towns v. Jackson, 287 F. Supp. 2d 749, 755–758 (E.D. Mich. 2003) (finding a sufficient link to an apartment where drugs were found for a rational jury to conclude that the constructively possessed the drugs, despite the defendant not possessing a key to the apartment).

9

Finally, even if this Court was not convinced that the evidence in this case was sufficient, the Court cannot conclude that it was objectively unreasonable for the Michigan court of appeals to determine that a rational trier of fact could find that constructive possession of the cocaine had been established beyond a reasonable doubt based upon the evidence introduced at trial.  Anderson, 451 F. App'x at 475.  Petitioner is not entitled to relief on his first claim.

**B.  Claim # 2 Prior Bad Acts**

Petitioner next claims he was denied a fair trial because the judge allowed the prosecutor to present evidence that Petitioner had been convicted in relation to two other narcotics cases in Pontiac, one out of Petitioner's prior residence on Fisher Street in Pontiac, Michigan in 2006 and one from the West Princeton Street address shortly before the offense that he is now challenging in his petition.  Petitioner claims that this evidence violated Michigan Rule of Evidence 404(b) because it was admitted solely to show his propensity to commit the charged offense.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States.  Id.  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court.  Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated Michigan Rules of Evidence 404(b) by admitting evidence of prior bad acts is non-cognizable on habeas review.  See Bey v. Bagley, 500 F. 3d 514, 519 (6th Cir. 2007); Estelle, 502 U.S. at 72 (The Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California

10

law).  The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence.  See Bugh v. Mitchell, 329 F. 3d 496, 512 (6th Cir. 2003).  Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3 Ineffective Assistance

In his third argument, Petitioner alleges ineffective assistance of counsel.  This argument fails.  To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Id.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  Id. at 689.  In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  Id.  Second, the defendant must show that such performance prejudiced his defense.  Id. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Petitioner first argues that trial counsel was ineffective for failing to object to testimony from Oakland County Sheriff's Deputy Charles Janczarek regarding the execution of a search warrant at Fisher Street on May 16, 2006.  Petitioner argues that counsel should have objected to the following testimony from Deputy Janczarek for being inflammatory, irrelevant, and

11

prejudicial, which was made in response to the prosecutor's question about how the officer could remember the incident from more than ten years later:

> [I]t was the largest Fentanyl seizure in Oakland County up to that point. So it was sixty-two packs of Fentanyl and I remember us sitting around thinking that this Fentanyl had been packaged for use as heroin, how many overdoses, how many deaths would have occurred from that. And the [Drug Enforcement Administration] actually took note of it and came up and did some investigation furthering that.

People v. Dudley, 2019 WL 4553477, at * 6.

The Michigan court of appeals agreed with Petitioner that counsel's failure to object to Deputy Janczarek's response was objectively unreasonable, but it concluded that in light of the extensive evidence of Petitioner's guilt, Petitioner was not prejudiced by counsel's failure to object.  People v. Dudley, 2019 WL 4553477, at *6.

A reviewing court "need not determine whether counsel's performance was deficient ... [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ....". Strickland, 466 U.S. at 697.  Thus, if an alleged error by counsel was not prejudicial, a federal court need not determine whether counsel's performance was constitutionally deficient.  See McMeans v. Brigano, 228 F.3d 674, 686 (6th Cir. 2000) (citing Strickland, 466 U.S. at 697).

Courts have found that counsel's failure to object to inadmissible or irrelevant evidence was not prejudicial where the evidence of guilt against the defendant was compelling.  See Lundgren v. Mitchell, 440 F.3d 754, 774–775 (6th Cir. 2006) (capital murder defendant did not show prejudice, as required element of ineffective assistance claim, as result of defense counsel's failure to make objections to evidence, where evidence of defendant's guilt was overwhelming); see also, Bray v. Cason, 375 F. App'x 466, 470–471 (6th Cir. 2010) (finding the defendant was not prejudiced by defense counsel's failure to object to bad acts testimony since there was overwhelming evidence of defendant's guilt); Kincade v. Wolfenbarger, 324 F. App'x 482, 493–

12

494 (6th Cir. 2009) (Even if trial counsel was deficient for failing to object to the prosecutor's reference to the codefendant's guilty plea during a first-degree murder prosecution, that failure did not prejudice the defendant and therefore did not constitute ineffective assistance of counsel.  In light of the overwhelming evidence of the defendant's guilt, he could not show that, but for counsel's failure to object, there was a reasonable probability that the outcome of the trial would have been different.)  The Michigan court of appeals' decision here is reasonable, precluding relief.

Petitioner also alleges that defense counsel was ineffective for not impeaching Officer Janczarek's credibility in this case with evidence from an unrelated 2017 case, where a circuit court found that the officer's testimony— regarding whether a search warrant was properly signed —was not credible.

The Michigan court of appeals rejected this claim:

Considering the facts of this case, defense counsel's failure to introduce this evidence at trial was not objectively unreasonable. Officer Janczarek's testimony was limited to the 2006 other-acts evidence, and Dudley corroborated the detective's testimony concerning that search. During his own testimony, Dudley testified that the police executed a search warrant in 2006, and that he and his brother were in the residence. Dudley admitted that he was in possession of what appeared to be heroin at that time, and pleaded no contest to possession with intent to deliver heroin. Thus, there was no reason for counsel to have believed that questioning the detective's credibility, using the proffered evidence or otherwise, would have made a difference in the outcome of trial. And, again, as discussed in Part II(B) of this opinion, the prosecutor presented ample evidence, independent of the 2006 other-acts evidence and Officer Janczarek's testimony regarding the same, from which the jury could have determined Dudley's guilt. Thus, it is improbable that defense counsel's failure to impeach Officer Janczarek in the manner urged by Dudley affected the outcome of the trial. Consequently, Dudley's ineffective-assistance claim cannot succeed.

People v. Dudley, 2019 WL 4553477, at *7.

Impeachment strategy falls within the category of an attorney's trial tactics that are difficult to attack.  Tackett v. Trierweiler, 956 F.3d 358, 374 (6th Cir. 2020).  A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant.  See

13

Millender v. Adams, 376 F.3d 520, 527 (6th Cir. 2004) (punctuation modified).  Nor does defense

counsel have a duty to present impeachment evidence that would be of marginal utility.  See United

States v. Munoz, 605 F.3d 359, 381-82 (6th Cir. 2010).  The Court agrees with the Michigan court

of appeals that the impeachment value of showing that a circuit court judge once found Officer

Janczarek's testimony about a search warrant not credible was minimal.  In light of the

overwhelming evidence of Petitioner's guilt on the charged offense—and Petitioner's admission

at trial that he had pleaded no contest to possession with intent to deliver heroin in the 2006 case

about which Officer Janczarek testified—any such impeachment would have had little impact.

Petitioner is not entitled to relief on his third claim.

### D.  Claim # 4 Fourth Amendment

Petitioner next contends that his Fourth Amendment rights were violated.  He primarily

alleges that the search warrant was invalid because the supporting affidavit did not establish the

informant's reliability.  Habeas review of a petitioner's arrest or search by state police is barred,

so long as the state provides a full and fair opportunity to litigate an illegal arrest or a search and

seizure claim.  Stone v. Powell, 428 U.S. 465, 494-495 (1976); Machacek v. Hofbauer, 213 F.3d

947, 952 (6th Cir. 2000).  For such an opportunity to exist, the state must provide—in the

abstract—a procedure that allows the petitioner to raise the claim.  Additionally, the petitioner's

ability to present the Fourth Amendment claim must not have been frustrated by a failure in that

procedure.  Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982).  The only relevant question is whether

a habeas petitioner had an opportunity to litigate his claim—not whether he actually pursued it or

whether the Fourth Amendment issue was decided correctly.  See Wynne v. Renico, 279 F. Supp.

2d 866, 892 (E.D. Mich. 2003); rev'd on other grounds, 606 F.3d 867 (6th Cir. 2010);  see also,

Brown v. Berghuis, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009 (explaining that, under Stone, the

14

correctness of a state court's conclusions involving a Fourth Amendment claim "is simply irrelevant").

In this case, although Petitioner did not present the Fourth Amendment claims to the trial court, he was able to present the claims to the Michigan court of appeals.  The opportunity to litigate, for purposes of Stone v. Powell, encompasses more than an evidentiary hearing in the trial court.  It also includes corrective action available through the appellate process on direct review of the conviction. See Rashad v. Lafler, 675 F.3d 564, 570 (6th Cir. 2012) (finding petitioner had ample opportunity to raise his Fourth Amendment claim in state court, where the state court rejected the petitioner's claims on forfeiture grounds --after the defendant's attorney failed to appear at a hearing designated to consider Fourth Amendment challenges-- and the state court of appeals later rejected the Fourth Amendment claims on their merits.).  Petitioner raised these claims in a supplemental pro se brief.[4]  This fact, however, does not mean that Petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claims.

Petitioner also appears to have raised several similar Fourth Amendment challenges in his post-conviction motion for relief from judgment and in his post-conviction appeal before the Michigan court of appeals.  Because Petitioner was able to raise—and did raise—the same or similar Fourth Amendment claims again in his post-conviction motion, Petitioner had a full and fair opportunity to raise his Fourth Amendment claims in the state courts and is thus not entitled to habeas relief.  See Hurick v. Woods, 672 F. App'x 520, 535 (6th Cir. 2016).  The Court rejects Petitioner's request for relief on this claim.

---

[4] See People v. Dudley, 2019 WL 4553477, at *5, 7–8.  Pro se supplemental briefs are permitted under Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a pro se brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." Ware v. Harry, 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

### E.  Claims # 5 and # 6 Procedural Defaulted Claims

Petitioner's fifth and sixth claims—that he was denied his Sixth Amendment right to effective assistance of counsel and a <u>Miranda</u> violation—are procedurally defaulted because he did not fully exhaust these claims and no longer has an available state court remedy to do so. Petitioner raised his fifth and sixth claims in his post-conviction motion for relief from judgment before the trial court and again before the Michigan court of appeals.  Petitioner's application for leave to appeal to the Michigan supreme court was rejected, however, for being untimely because it was filed more than 56 days after the Michigan court of appeals had denied his application for leave to appeal the denial of the post-conviction motion.

Generally, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court.  28 U.S.C. § 2254(b) and (c). See <u>Picard v. Connor</u>, 404 U. S. 270, 275–278 (1971).  Denial of a motion for relief from judgment is reviewable by the Michigan court of appeals and the Michigan supreme court upon the filing of an application for leave to appeal.  See <u>Nasr v. Stegall,</u> 978 F. Supp. 714, 717 (E.D. Mich. 1997). Petitioner, in fact, was required to appeal the denial of his post-conviction motion to the Michigan court of appeals and the Michigan supreme court in order to properly exhaust any claims that he raised in his post-conviction motion.  See, e.g., <u>Mohn v. Bock,</u> 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002).

Where a habeas petitioner has an opportunity under state law to file an appeal following the state trial court's denial of his or her state post-conviction motion, but failed to do so, the petitioner has failed to exhaust all available state court remedies. See <u>Cox v. Cardwell,</u> 464 F.2d 639, 644–645 (6th Cir. 1972).  To properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his or her post-conviction motion before the

16

state trial court and in his or her post-conviction appeal to the state's appellate courts.  See Smith v. Gaetz, 565 F.3d 346, 352 (7th Cir. 2009).

Pursuant to Michigan Court Rule 7.305(C)(2), Petitioner had 56 days to file a delayed application for leave to appeal with the Michigan supreme court after the Michigan court of appeals denied his appeal.  Petitioner's application for leave to appeal to the Michigan supreme court was rejected because it was filed beyond that time limit.  Because Petitioner failed to raise his fifth and sixth claims before the Michigan supreme court in a timely manner, the claims are unexhausted. See, e.g., Rupert v. Berghuis, 619 F. Supp. 2d 363, 367 (W.D. Mich. 2008) (habeas petitioner failed to exhaust his state remedies as result of his failure to file timely appeal to Michigan supreme court).

Unfortunately, for Petitioner, he no longer has any available state court remedies with which to exhaust these two claims.  Under Michigan Court Rule 6.502(G)(1), a criminal defendant is only permitted to file one post-conviction motion for relief from judgment.  See Gadomski v. Renico, 258 F. App'x 781, 783 (6th Cir. 2007); Hudson v. Martin, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Petitioner has no remaining state court remedies with which to exhaust his fifth and sixth claims.  If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.  However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal.  Hannah v. Conley, 49 F.3d 1193, 1195-96 (6th Cir. 1995).  A claim of actual innocence will excuse this "cause and prejudice" requirement. Id. at 1196, n. 3.

Petitioner has failed to establish cause to excuse his default by arguing ineffective assistance of counsel or otherwise. While ineffective assistance of appellate counsel might excuse Petitioner's failure to raise his claims on his direct appeal, it does not excuse Petitioner's own failure to properly exhaust these claims in a timely manner on post-conviction motion review. See Gadomski v. Renico, 258 F. App'x at 784.

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider Petitioner's fifth and sixth claims as grounds for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. See Malcum v. Burt, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Petitioner has presented an affidavit from his brother and co-defendant Antwan Durran Dudley, dated July 19, 2020, in which his brother attempts to take full responsibility for the cocaine seized at their great-grandmother's residence and claims Petitioner was not involved in any way with this cocaine. Antwan claims that prior to Petitioner's trial, the prosecutor threatened to withdraw Antwan's guilty or no-contest plea if he testified on his brother Simone's behalf. Antwan D. Dudley Aff. at PageID.102–104 (Dkt. 1-1). As mentioned above, Petitioner's brother pled no-contest and was sentenced on March 15, 2020 to seven years, three months to forty years in prison. On March 24, 2025, he was discharged from his sentence. [5]

A long-delayed affidavit like Petitioner's brother's, which seeks to exonerate a habeas petitioner and shift the blame for the crime to another person, is "treated with a fair degree of

---

[5] The Court obtained some of this information from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), of which this Court is permitted to take judicial notice. See Ward v. Wolfenbarger, 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004). https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=614929.

18

skepticism." Herrera v. Collins, 506 U.S. 390, 423 (1993).  Furthermore, in determining whether a habeas petitioner has satisfied the miscarriage of justice standard, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." Schlup v. Delo, 513 U.S. 298, 332 (1995).

In this case, Antwan Dudley's affidavit is suspicious because the purported affidavit does not offer any convincing explanation as to why he waited over two years after Petitioner's conviction on February 15, 2018 to come forward and attempt to exonerate Petitioner.  See Lewis v. Smith, 100 F. App'x 351, 355 (6th Cir. 2004) (finding it proper for a district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial).  In particular, "[p]ostconviction statements by codefendants [which attempt to exculpate a criminal defendant] are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences." See Allen v. Yukins, 366 F. 3d 396, 405 (6th Cir. 2004) (finding that the post-conviction affidavits of habeas petitioner's two codefendants were legally insufficient to establish that she was actually innocent, so as to toll the AEDPA's statute of limitations; affidavit was inherently suspect because the codefendant could have signed it to help petitioner without endangering his own interests).  Antwan Dudley's post-conviction attempt to exculpate Petitioner is suspect, in light of the fact that it was made after Antwan Dudley himself was sentenced and was no longer subject to any further punishment or other adverse consequences for his actions.  Accordingly, this evidence is not reliable evidence of Petitioner's actual innocence, so as to excuse any procedural default.

Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's

19

procedurally defaulted claims on the merits. Malcum, 276 F. Supp. 2d at 677. Petitioner is not entitled to habeas relief on his fifth and sixth claims.

### F.  Certificate of Appealability and IFP on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484–485 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that: (i) jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and (ii) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id. at 484. "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336–337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed IFP on appeal. Id.

### III.    CONCLUSION

The Court denies the petition for writ of habeas corpus (Dkt. 1). Because the petition is denied, Petitioner's motion to remand (Dkt. 13) and his motion for a new trial (Dkt. 14) are denied as moot. The Court denies Petitioner a certificate of appealability and grants Petitioner leave to appeal IFP.

**SO ORDERED.**

Dated: March 12, 2026      s/Mark A. Goldsmith
Detroit, Michigan       MARK A. GOLDSMITH
             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 12, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager